UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ALEJANDRO ESPINOZA,                                    CASE NO.

      Plaintiff,

vs.

PVH CORP., DELAWARE,
A Foreign for Profit Corporation
D/B/A Calvin Klein

      Defendant.
_____/

## COMPLAINT FOR DECLARATORY AND
## INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND

      Plaintiff, ALEJANDRO ESPINOZA, through undersigned counsel, sues Defendant, PVH

CORP., DELAWARE, a foreign corporation d/b/a Calvin Klein (hereinafter referred to as "Calvin

Klein"), for declaratory and injunctive relief, and damages, and alleges as follows:

1)     This action is brought under Title III of the Americans with Disabilities Act ("ADA"), that

is codified in 42 U.S.C. §§12181-12189.

2)     This action is also brought pursuant to 28 C.F.R. Part 36.

3)     This Court has jurisdiction over this case based on federal question jurisdiction, as provided

in 28 U.S.C. §1331 and the provisions of the ADA.

4)     Furthermore, because this Court has jurisdiction over the ADA claim, the Court has

supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

5)     Plaintiff is sui juris, and he is disabled as defined by the ADA and ADA Amendments Act

of 2008, 42 U.S.C. §12101 ("ADAAA").

6)      Defendant, Calvin Klein, is a foreign limited liability company authorized to do business and doing business in the State of Florida.

7)      Defendant, Calvin Klein, is a company that sells men's, women's, gender inclusive and kids clothing, underwear, shoes, accessories, and fragrances. There is a retail location in Miami-Dade County.

8)      Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9)      Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase a crewneck t-shirt.

10)     Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer.  The computer is Plaintiff's personal property, and a claim for trespass attached to same.

11)     The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

12)     The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

13)     Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

14)     Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

15)     At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision.

16)     Plaintiff's visual impairment interferes with his day-to-day activities and causes limitations in visualizing their environment.  As such, Plaintiff is a member of a protected class under the

ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

17)    Plaintiff regularly uses the computer, but he needs the assistance of special software for visually impaired persons.  The software that he uses is screen reader software that is readily available commercially.

18)    Defendant is a private entity which owns and operates retail locations.  The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

19)    Defendant's website is a place of public accommodation per 42 U.S.C. Section 12181(7)(E) because it's an extension of Defendant's brick and mortar stores.  The public is able to, among other things, view the products available at defendant's locations, purchase clothing, underwear, shoes, accessories, and fragrances through defendant's website, subscribe to Defendant's newsletter, subscribe to obtain 10% discount, receive an extra 10% student discount, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, and receive promotions offered on the website.

20)    Since the Defendant's website is a public accommodation, it must comply with the requirements of the ADA.  The website cannot discriminate against individuals with disabilities.

21)    Plaintiff is a customer of Defendant who is and was interested in purchasing a t-shirt through Defendant's website and at Defendant's stores and visiting Defendant's brick and mortar locations.

22)     Plaintiff is not able to visit the physical locations without the assistance of a family member or caretaker, so the ability to purchase merchandise on Defendant's website for delivery to his home is important to his as an alternative when he is not able to visit the Defendant's stores.

23)     The website also services Defendant's physical stores by providing information on its brand, Defendant's newsletter, promotions offered on the website, and other information that Defendant is interested in communicating to its customers about its physical locations.

24)     Since the website allows the public the ability to view the products available at defendant's locations, purchase clothing, underwear, shoes, accessories, and fragrances, through defendant's website, subscribe to Defendant's newsletter, subscribe to obtain 10% discount, receive an extra 10% student discount, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, and receive promotions offered on the website, the website is an extension of, and gateway to, Defendant's physical stores.  By this nexus, the website is characterized as an intangible service, privilege and advantage provided by a place of public accommodation as defined under the ADA, and thus an extension of the services, privileges and advantages made available to the general public by Defendant through its retail brick and mortar stores.

25)     Because the public can view and purchase Defendant's merchandise that is also offered for sale by Defendant at its physical stores, subscribe to Defendant's newsletter, subscribe to obtain 10% discount, receive an extra 10% student discount, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, and receive promotions offered on the website, the website is an extension of and gateway to the physical stores, which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E).  As such, the website, as an intangible service, privilege and advantage of Defendant's brick and mortar locations, must be

fully accessible and in compliance with the ADA, must not discriminate against individuals with disabilities, and must not deny full and equal enjoyment of the same services, privileges and advantages afforded to the general public both online and at the physical locations.

26)    At all times material hereto, Defendant was and still is an organization owning and operating the website located https://www.calvinklein.us/. Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, and Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA.

27)    Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize, Defendant's physical stores, and purchase Defendant's merchandise, sign up for Defendant's newsletter and create an account through the website and at Defendant's physical stores.

28)    The opportunity to shop Defendant's merchandise from his home is an important accommodation for Plaintiff because traveling outside of the home as a visually disabled individual is often a difficult, hazardous, frustrating, confusing, and frightening experience.  Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

29)    Like most consumers, Plaintiff accesses numerous websites at a time to compare merchandise and prices. Plaintiff may look at several dozens of sites to compare features and prices.

30)    During the months of August and September, 2022, Plaintiff attempted on several occasions to utilize the website to browse through the merchandise to educate himself as to the

merchandise and with the intent to make a purchase through the website or at one of Defendant's physical stores.

31)   Places of public accommodation are not just brick-and-mortar structures. The United States Department of Justice and the binding case law increasingly recognize that private entities are providing goods and services to the public through websites that operate as places of public accommodation under Title III.

32)   Defendant is required to make reasonable accommodations to its websites for individuals with disabilities to allow them to participate in web-based promotions and obtain goods or services via the Internet just as sighted persons are able to do.

33)   Plaintiff utilized Chrome Vox ("Screen Reader Software") to attempt to purchase clothing on Defendant's website. However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

34)   A person who can see can enjoy the benefits and privileges provided by Defendant's website that include, but are not limited to viewing the products available at defendant's locations, purchasing clothing, underwear, shoes, accessories, and fragrances, through defendant's website, subscribe to Defendant's newsletter, subscribe to obtain 10% discount, receive an extra 10% student discount, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, and receive promotions offered on the website.

35)   A person who cannot see, like the Plaintiff in this case, cannot go to Defendant's website and avail themselves of the same privileges. Thus, the Plaintiff has suffered discrimination due to Defendant's failure to provide a reasonable accommodation for Plaintiff's disability.

36)     The Department of Justice has provided useful guidance regarding website accessibility under the ADA, and the binding and persuasive case law in this district has applied the Web Content Accessibility Guidelines ("WCAG") 2.0 or 2.1 to determine accessibility.

37)     Defendant's website does in fact fail the following WCAG 2.0-AA Compliance standards and it does not provide sufficient alternatives to serve the equivalent purpose:

System settings while doing the review:

Operating system: Windows 10

Browser: Google Chrome v. 104.0.5112.102

Screen Reader: NVDA v. 2022.2.2

List of a few of the violations encountered:


Violation: Focusable components do not receive focus in an order that preserves meaning and operability. When a user activates the Search button on the main menu, the focus fails to preserve operability as it does not remain on the search form field and instead shifts to the Featured Best Seller section within the search dialogue box.

Applicable WCAG 2.1 Standard at Issue: Standard 2.4.3 Focus Order (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/ezyc3ju9nmqrdp0/2022_09_13_173512_01.mp4?dl=0


Violation: Focusable components do not receive focus in an order that preserves meaning and operability. When a user clicks through to a product detail page the focus fails to preserve operability as it does not continue onto the product details page and instead shifts to a Save 10% modal.

Applicable WCAG 2.1 Standard at Issue: Standard 2.4.3 Focus Order (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/m4ps3mb9jhfxvw1/2022_09_13_173512_02.mp4?dl=0

Violation: Functionality of the content is not operable through a keyboard interface. Within the product details, when a user activates the Size Guide button using the keyboard, the size guide fails to load.

Applicable WCAG 2.1 Standard at Issue: Standard 2.1.1 Keyboard (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/311nbz53low5a79/2022_09_13_173512_04.mp4?dl=0

Violation: Functionality of the content is not operable through a keyboard interface. Within the product details, the user is unable to pick a color using the keyboard.

Applicable WCAG 2.1 Standard at Issue: Standard 2.1.1 Keyboard (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/wi56lu50tu5m584/2022_09_13_173512_05.mp4?dl=0

Violation: Focusable components do not receive focus in an order that preserves meaning and operability. When a user adds a product to their bag, the focus fails to preserve (keyboard) operability as it does not remain on the open Shopping Bag dialogue and instead shifts back to the product detail page.

Applicable WCAG 2.1 Standard at Issue: Standard 2.4.3 Focus Order (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/xk6pk6do3zoff2u/2022_09_13_173512_06.mp4?dl=0

38)      Furthermore, Defendant's website does not contain accessibility assistance that would direct a visually impaired person like the Plaintiff to someone who he can contact for assistance, questions, or concerns.

39)      Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the website, in contravention of the ADA.

40)      On information and belief, Defendant is, and at all times has been, aware of the barriers to its website which prevent individuals with disabilities who are visually impaired from comprehending the information within same, and is also aware of the need to provide access to all persons who visit its site.

41)      Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this Complaint, such that this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's discriminatory practices in connection with use of its website.

42)      Notice to Defendant is not required because of Defendant's failure to cure the violations.

43)      Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

44)      Plaintiff has retained the undersigned attorneys to represent him in this case, and has agreed to pay them a reasonable fee for their services.


**<u>COUNT I – VIOLATION OF THE ADA</u>**

45)     Plaintiff realleges paragraphs 1 through 44 as if set forth fully herein.

46)     Defendant owns and operates the https://www.calvinklein.us/ website, and is a public accommodation subject to the ADA pursuant to 42 U.S.C. §12181(7)(E).

47)     Defendant's website is inaccessible to persons with disabilities like the Plaintiff, who is visually impaired.  Plaintiff was not able to enjoy full and equal access to the information and services that Defendant has made available to the public on its website, in violation of 42 U.S.C. §12101. *et seq*, and as prohibited by 42 U.S.C. §12182 *et seq*.

48)     Defendant's website is not in compliance with the ADA.

49)     Defendant has made no reasonable accommodation for Plaintiff's disability.

50)     A cursory review of a portion of the Defendant's website revealed that the website is not accessible to persons like the Plaintiff that are visually impaired as required by law and for which there is no sufficient alternative on Defendant's website, including:

System settings while doing the review:

Operating system: Windows 10

Browser: Google Chrome v. 104.0.5112.102

Screen Reader: NVDA v. 2022.2.2

List of a few of the violations encountered:


Violation: Focusable components do not receive focus in an order that preserves meaning and operability. When a user activates the Search button on the main menu, the focus fails to preserve operability as it does not remain on the search form field and instead shifts to the Featured Best Seller section within the search dialogue box.

Applicable WCAG 2.1 Standard at Issue: Standard 2.4.3 Focus Order (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/ezyc3ju9nmqrdp0/2022_09_13_173512_01.mp4?dl=0

Violation: Focusable components do not receive focus in an order that preserves meaning and operability. When a user clicks through to a product detail page the focus fails to preserve operability as it does not continue onto the product details page and instead shifts to a Save 10% modal.

Applicable WCAG 2.1 Standard at Issue: Standard 2.4.3 Focus Order (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/m4ps3mb9jhfxvw1/2022_09_13_173512_02.mp4?dl=0

Violation: Functionality of the content is not operable through a keyboard interface. Within the product details, when a user activates the Size Guide button using the keyboard, the size guide fails to load.

Applicable WCAG 2.1 Standard at Issue: Standard 2.1.1 Keyboard (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/311nbz53low5a79/2022_09_13_173512_04.mp4?dl=0

Violation: Functionality of the content is not operable through a keyboard interface. Within the product details, the user is unable to pick a color using the keyboard.

Applicable WCAG 2.1 Standard at Issue: Standard 2.1.1 Keyboard (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/wi56lu50tu5m584/2022_09_13_173512_05.mp4?dl=0

Violation: Focusable components do not receive focus in an order that preserves meaning and operability. When a user adds a product to their bag, the focus fails to preserve (keyboard) operability as it does not remain on the open Shopping Bag dialogue and instead shifts back to the product detail page.

Applicable WCAG 2.1 Standard at Issue: Standard 2.4.3 Focus Order (Level A).

Screen Capture Evidence:

https://www.dropbox.com/s/xk6pk6do3zoff2u/2022_09_13_173512_06.mp4?dl=0

51)    Due to Defendant's failure to provide an ADA compliant website, the Plaintiff has been injured since he has been denied full access to Defendant's website.

52)    As a result, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to correct the inaccessibility that leads to discrimination against visually impaired persons.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A.         A declaration that Defendant's website is in violation of the ADA;

B.         An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

C.         An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display

of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

D.        An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

E.        An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

F.        An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

G.        An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

H.        An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.        An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

J.        An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

K.        An award to Plaintiff of his reasonable attorney's fees and costs pursuant to in 42 U.S.C. §§12181-12189, and pursuant to such other laws and statutes that may apply, and further relief as the Court deems just and equitable.



[1]

## COUNT II – TRESPASS

53)    Plaintiff realleges paragraphs 1 through 44 as if set forth herein.

54)    Defendant's website contains software analytics.  Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

55)    Plaintiff never consented to and was unaware that Defendant's website was placing software on his computer.

56)    Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on his personal computer, which was done without his knowledge and consent.

57)     Defendant's trespass has damaged Plaintiff by affecting the condition and value of his computer.

58)     On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Cookies Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

TERMS & CONDITIONS (U.S. AND CANADA)

Last Updated April, 2019.

Calvin Klein, Inc., a New York corporation ("Calvin Klein," "we," "us," or "our") provides a website located at calvinklein.com and calvinklein.us in conjunction with third parties. In certain Calvin Klein stores, we may provide a wireless local area network for use by consumers (the "Wi-Fi Service").

These Terms and Conditions apply to your use of the calvinklein.com or calvinklein.us website (or any successor or similar digital property such as an official app operated by us; or any other services that reference these Terms and Conditions) (the "Site"), the Wi-Fi Service (where offered), and any other services provided by us (individually or collectively, the "Service"). Use of the Wi-Fi Service is subject to additional terms specified in our Wi-Fi Terms of Service, which appear below.

Calvin Klein and its parent, affiliates, and licensees, and their respective officers, directors, employees, shareholders, agents, successors, assigns, vendors, retail partners and any other party involved in the creation, operation, production or transmission of the Site or provision of any other Service shall be referred to herein as "Calvin Klein Parties."

PLEASE REVIEW THESE TERMS OF USE CAREFULLY PRIOR TO USING THE SITE OR ANY OTHER SERVICE. YOUR USE OF ANY SERVICE INDICATES YOUR ACCEPTANCE OF THESE TERMS AND CONDITIONS. EACH TIME THAT YOU USE A SERVICE, THE CURRENT VERSION OF THESE TERMS & CONDITIONS WILL APPLY. WHEN YOU USE A SERVICE, YOU SHOULD CHECK THE DATE OF THESE TERMS & CONDITIONS (WHICH APPEARS ABOVE) AND REVIEW ANY CHANGES THAT HAVE BEEN MADE SINCE YOUR LAST VISIT TO THE SITE.
IF YOU DO NOT ACCEPT THESE TERMS AND CONDITIONS, YOU MAY NOT ACCESS OR USE THE SITE OR ANY OTHER CALVIN KLEIN SERVICE.

1. Site User Eligibility.

The Site is available worldwide and may be operated from various locations both within and outside the United States of America ("USA"). Access to and use of the Site, including functionality and features available on the Site ("Features") and products and services available for purchase through the Site, however, may be inappropriate, prohibited or restricted in countries outside the United States or Canada. The Calvin Klein Parties make no warranty or representations that the Site

or the Features are appropriate or available for access/use outside of the USA or Canada. If you access/use the Site from outside the USA or Canada, you do so at your own risk and are responsible for complying with the laws and regulations of the territory from which you access/use the Site.

Users of all ages are welcome to browse the Site. However, if you are under the age of 13, you should not provide any information about yourself on or through the Site, including, but not limited to, your name, address, email address, phone number and other personal information.

2. Establishing an Account.

Users of all ages are welcome to browse the Site, however, you may only establish an account if you are 18 years of age or over. In order to purchase products/services from the Site and in order to access/use some Features on the Site, you may be required to establish and use an account.

When you register for an account you must (i) provide accurate and truthful information, and (ii) update such information from time to time as necessary to keep your registration information current and accurate. By establishing an account, you represent and warrant you have the right and are authorized to provide the information you provide when you register for your account. You are responsible for maintaining the confidentiality of your account information and password and for restricting access to such information and to your computer. All activities that occur under your account and/or password shall be your responsibility.

3. Information You Provide/Submissions.

Your personal information will be handled in accordance with and subject to the terms of our Privacy Policy. Any other material, information, suggestions, ideas, concepts, know-how, techniques, questions, comments and any other communication or content you transmit or post to the Site or any other Service in any form and in any manner ("User Communications") (i) is and will be considered non-confidential, non-personal and non-proprietary to you or anyone else and (ii) may be disseminated or used by the Calvin Klein Parties for any purpose without (a) compensation to you or anyone else or (b) acknowledgement of you or anyone else as the source of such User Communications. Therefore, do not transmit or post to the Site or other Service any ideas, materials, suggestions, content or other information you would like to keep confidential or for which you would like or expect acknowledgement or compensation. If you order a custom product through the Site (each, a "Custom Product"), you may if and as applicable, select or submit to us, certain items, such as initials, lettering, symbols, patches, colors, text, designs, waistbands, lettering, photographs, drawings, logos and other materials that we will use to create the Custom Product ("Customizations"). The Customizations, to the extent submitted by you, constitute User Communications and are subject to these Terms and Conditions. Calvin Klein reserves the right to reject any Customizations that violate these Terms and Conditions or other terms and conditions applicable to the Custom Product, or are otherwise unacceptable to Calvin Klein and in such case, Calvin Klein may reject your order for the Custom Products. All orders for Custom Products are final and are not subject to return. Calvin Klein reserves all rights in and to the underlying product

used to create the Custom Product and any patches, waistbands, colors and other customization options Calvin Klein makes available to you, and you will not acquire any rights of any kind or nature in or such underlying product or such customization options at any time. In the event you otherwise acquire any rights in or to the Custom Product, you hereby immediately and automatically assign all such rights from the date of inception to Calvin Klein. Calvin Klein reserves the right to ship your order from outside the U.S. By purchasing the Custom Products, you or your receiver agree to become the Importer of Record. Therefore, in addition to the cost of the Custom Products, you or your receiver is also liable to pay all applicable duties, taxes, customs levies and surcharges charged by local authorities or other state institutions in addition to brokerage and administration fees charged by the courier in the event: (a) your order exceeds the duty-free threshold of USD $800 per person per day, and/or (b) your order is deemed as a 'commercial shipment' by U.S. Customs and Border Protection. By placing an order for Custom Products, you acknowledge and agree that you are the importer of record for the Custom Products and you acknowledge and agree to your obligation to comply with all applicable laws and regulations of the destination country.

You hereby grant the Calvin Klein Parties a worldwide, irrevocable, non-exclusive, royalty-free, perpetual license to reproduce, disclose, transmit, modify, create derivative works of, adapt, publish, publicly perform and display, distribute, syndicate, sublicense and otherwise use User Communications in any manner whatsoever for any or all commercial or non-commercial purposes, with or without

attribution or any compensation to you or any other party ("User Communications License"). The Calvin Klein Parties may, but are not obligated to, monitor or review any User Communications. The Calvin Klein Parties shall have no obligations to use, return, review, or respond to any User Communications or any liability related to the content of any such User Communications, whether or not arising under the laws of copyright, libel, privacy, obscenity, or otherwise.

Calvin Klein retains the right to remove any or all User Communications that includes any material that Calvin Klein deems inappropriate or unacceptable.

By making a User Communication, you represent and warrant that (i) you own all right, title and interest in and to the User Communication, or you have the necessary approvals and permissions to grant the User Communications License described above, (ii) the User Communication, and the exercise by Calvin Klein (or other authorized parties) of the rights granted under the User Communications License in relation to such User Communication, does not violate applicable law or the intellectual property rights or other rights of others, including, but not limited to, patent, trade secret, copyright (including without limitation moral rights), trademark, publicity, privacy and contract rights of others and (iii) the User Communication does not contain software viruses, spiders, spybots, commercial solicitation, chain letters, mass mailings, any form of spam, or any other content that is prohibited under these Terms and Conditions.

We do not guarantee that User Communications will not be lost or damaged or that you will be able to retrieve User Communications.

4. Prohibited Submissions.

You are prohibited from posting or transmitting any unlawful, threatening, defamatory, libelous, obscene, pornographic or profane material or any material that could constitute or encourage conduct that would be considered a criminal offense or give rise to civil liability, or otherwise violate any law. In addition to any remedies that Calvin Klein may have at law or in equity, if Calvin Klein reasonably determines that you have violated or are likely to violate the foregoing prohibitions, Calvin Klein may take any action they reasonably deem necessary to cure or prevent the violation, including without limitation, the immediate removal from this Site of the related materials. Calvin Klein will fully cooperate with any law enforcement authorities or court order or subpoena requesting or directing Calvin Klein to disclose the identity of anyone posting such materials.

5. Ownership and Permitted Use of Content.

The Site design and all text, graphics, information, trademarks, service marks, trade names, photographs, advertisements, content, and other material displayed on or that can be downloaded from the Site or any other Service (the "Content") are either the property of, or used with permission by, Calvin Klein. The ownership of all Content is retained by its owner. You may not (i) modify the information or materials located on the Site or accessible via a Service in any way or reproduce or publicly display, perform, or distribute or otherwise use any such materials for any public or

commercial purpose, including marketing, or (ii) remove, obscure or otherwise deface proprietary notices appearing on any Content, including copyright, trademark and other intellectual property notices.

The Content is protected by copyright, trademark and other laws and international treaty provisions and may not be used except as permitted in these Terms and Conditions or with the prior written permission of the owner of such Content. Any unauthorized use by you of such Content may subject you to civil and criminal penalties.

6. Trademarks.

Certain trademarks, trade names, service marks and logos used or displayed on the Site or any other Service are registered and unregistered trademarks, trade names and service marks of the Calvin Klein Parties. Other trademarks, trade names and service marks used or displayed on the Site are the registered and unregistered trademarks, trade names and service marks of their respective owners. Nothing contained on the Site or any Service grants or should be construed as granting, by implication, estoppel, or otherwise, any license or right to use any of the displayed trademarks, trade names, service marks or logos without the written permission of Calvin Klein, it parent, affiliates, or other related or affiliated parties.

7. Prohibited Actions.

While visiting the Site and participating in, accessing and using the Features (cumulatively "Using the Site"), you must conduct yourself in a polite, courteous and

respectful manner, comply with all applicable laws, rules and regulations and supply truthful and non-misleading information. For example, you may not, while Using the Site: request, or otherwise attempt to harvest, obtain or store, personal information, passwords, account information or any other type of information relating to other users; access or use another person's account; disguise the origin of User Communication; alter, modify, frame, or "mirror" any Content; create a deep-link to our Site by by-passing our Site's home page; use any data mining, robots, or similar data-gathering and extraction tools in connection with the Site; inhibit, disrupt, or otherwise prevent anyone from using or accessing the Site or interrupt any user's experience on the Site, including, but not limited to, acting in any manner that disrupts users' real-time exchanges; interfere with or disrupt the Site, or servers or network connections to the Site, disobey any requirements, procedures, policies or regulations of networks connected to the Site; modify, adapt, sublicense, translate, sell, reverse engineer, decompile or disassemble any portion of the Site; or attempt to gain unauthorized access to the Site (or any portion thereof).

8. Availability of Products, Services, Features and Content.

All Features, Content, and products and services available on or through the Site or any other Service, including, but not limited to, prices of such products and services, are subject to change at any time without notice. In addition, any Feature, Content, product or service may be discontinued at any time in our sole discretion. The inclusion of any Features, Content, products or services in the Site or other Service at a particular time does not imply or warrant that these products or services will be available at any time. It is your responsibility to ascertain and obey all applicable

local, state, provincial, federal and international laws (including minimum age requirements) in regard to the possession, use and sale of any service or product purchased from this Site. By placing an order, you represent that the products ordered will be used only in a lawful manner.

9. Accuracy of Information.

The Calvin Klein Parties take reasonable efforts to ensure that information on the Site or provided via any other Service is complete, accurate and current. Despite such efforts, however, the information on the Site or made available via a Service may be inaccurate, incomplete or out of date. Weights, measures, product descriptions, recommendations, commentary regarding products and similar descriptions are provided for convenience purposes only and may be approximations. The Calvin Klein Parties make efforts to accurately display the attributes of our products and services available for purchase, including the applicable colors; however, the actual color you see will depend on your computer system and we cannot guarantee that your computer will accurately display such colors. The Calvin Klein Parties make no representation as to the completeness, accuracy or timeliness of any information. For example, products included on the Site may be unavailable, may have different attributes than those listed, or, to the extent permitted by law, may actually carry a different price than that stated on the Site. In addition, we may make changes in information about price and availability without notice. While it is the practice of the Calvin Klein Parties to confirm orders by email, the receipt of an email order confirmation does not constitute acceptance of an order or confirmation of an offer to sell a product or service. The Calvin Klein Parties reserve the right,

without prior notice, to limit the order quantity on any product or service and/or to refuse service to any customer. The Calvin Klein Parties also may require verification of information prior to the acceptance and/or shipment of any order.

10. Shipment of Order.

Orders will be shipped to the address designated by the purchaser as long as that shipping address is compliant with the shipping restrictions contained on the Site (or any other Service) and Orders may be shipped through a third party shipper or fulfillment process. All purchases from this Site or other Service are made pursuant to a shipment contract. As a result, risk of loss and title for items purchased from the Site or a Service pass to the buyer upon delivery of the items to the carrier. The buyer is responsible for filing any claims with carriers for damaged and/or lost shipments.

11. Linking to this Site.

Creating or maintaining any link from another website to any page on this Site without Calvin Klein's prior written permission is prohibited. Any permitted links to this Site must comply with all applicable laws, rule and regulations.

12. Applicability of Additional Terms and Conditions.

Additional or different terms and conditions ("Other Terms") may apply in connection with certain Features (e.g. testimonials, sweepstakes or contest entries) or another Service offered by us. If applicable, these Other Terms will be set forth (i) where you are permitted to submit Content, access or use Features or any other Service, or purchase products and services, or (ii) in a link adjacent to where you are

permitted to submit Content, access Features, or purchase products and services. These Other Terms are incorporated into and made a part of these Terms and Conditions by reference. In the event Other Terms conflict with these Terms and Conditions, the Other Terms shall control with respect to the subject matter to which such Other Terms apply.

13. Third Party Links.

From time to time, the Site or other Service may contain links to websites that are not governed by these Terms and Conditions (the "Linked Sites"). All such links are provided solely as a convenience to you. If you use these links, you will leave this Site. The Calvin Klein Parties are not responsible for any content, materials or other information located on or accessible from any other website. The Calvin Klein Parties do not endorse, guarantee, or make any representations or warranties regarding any other website, or any content, materials or other information located on or accessible from such websites, or the results that you may obtain from using such websites. If you decide to access any other website linked to or from this Site, you do so entirely at your own risk. You should review the policies and terms and conditions associated with Linked Sites closely before using, submitting information to such Linked Sites, and allowing children to visit Linked Sites.

14. Disclaimer of Warranty.

THE SITE AND ANY OTHER SERVICE PROVIDED BY US ARE PROVIDED "AS IS" AND "AS AVAILABLE." TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, CALVIN KLEIN AND THE OTHER CALVIN KLEIN

PARTIES DISCLAIM ALL WARRANTIES, CONDITIONS AND REPRESENTATIONS OF ANY KIND, WHETHER EXPRESS, IMPLIED OR STATUTORY, INCLUDING WITHOUT LIMITATION ANY WARRANTIES OR CONDITIONS: (i) OF MERCHANTABILITY, MERCHANTABLE QUALITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT; OR (ii) THAT ACCESS TO OR USE OF THE SITE OR ANY OTHER SERVICE OR ANY PART THEREOF WILL BE UNINTERRUPTED, FREE OF VIRUSES OR OTHER HARMFUL CODE, OR SECURE, OR THAT PROBLEMS WILL BE CORRECTED, EVEN IF CALVIN KLEIN OR ANY OTHER CALVIN KLEIN PARTY IS ON NOTICE OF SUCH PROBLEMS. YOU AGREE THAT YOUR USE OF THIRD-PARTY WEBSITES AND RESOURCES, ACCESSED THROUGH USE OF THE SERVICE IS AT YOUR OWN RISK AND IS SUBJECT TO THE TERMS AND CONDITIONS APPLICABLE TO THOSE THIRD-PARTY SITES AND RESOURCES.

15. Limitations of Liability.

TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT WILL THE CALVIN KLEIN PARTIES BE LIABLE TO ANY PARTY FOR ANY INDIRECT, SPECIAL, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES (INCLUDING, WITHOUT LIMITATION, THOSE RESULTING FROM LOST PROFITS, LOST DATA OR BUSINESS INTERRUPTION) ARISING OUT OF THE USE OR INABILITY TO USE ANY SERVICE, OR THE RESULTS THEREFROM, WHETHER BASED ON WARRANTY, CONTRACT, TORT (INCLUDING WITHOUT LIMITATION

NEGLIGENCE) OR ANY OTHER LEGAL THEORY AND WHETHER OR NOT ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

THE FOREGOING DISCLAIMER OF EXPRESS, IMPLIED OR STATUTORY WARRANTIES AND LIMITATIONS OF LIABILITY DO NOT APPLY TO THE EXTENT PROHIBITED BY LAW (INCLUDING, E.G, AS PROHIBITED BY THE LAWS OF THE STATE OF NEW JERSEY OR THE PROVINCES OF QUEBEC OR ONTARIO). PLEASE REFER TO YOUR LOCAL LAWS FOR ANY SUCH PROHIBITIONS.

16. Termination.

Calvin Klein reserves the right to suspend or terminate your account (and, subject to applicable laws, delete the profile corresponding to such account and any accompanying content) or your use of the Site or Features or any other Service at any time, for any reason or for no reason. We reserve the right to change, suspend, or discontinue all or any aspect of this Site and Features, products and services available on or through the Site, or any other Service at any time without notice. You are personally liable for any orders that you place or charges that you incur or are made under your account prior to termination. We shall not be liable to you or any third party for any of the foregoing.

17. Governing Law and Dispute Resolution/Arbitration

Governing Law

To the fullest extent permitted by law, any claim, controversy or dispute arising out

of or relating to the Site or any other Service, these terms or any other policies or other terms incorporated herein (including the breach, termination, enforcement, interpretation, enforceability, validity, or rights under any of any of the foregoing) (each, a "Dispute") will be governed by and construed in accordance with the laws of the State of New York, USA, without regard to its choice of law principles.

Binding Arbitration

To the fullest extent permitted by law, you and Calvin Klein each agree to submit exclusively to confidential, binding arbitration in the event of a Dispute. The arbitration will be held in New York, New York on an individual basis and not as a class action. In the event that arbitration is not permitted by applicable law: (i) the parties expressly agree that any Dispute will be brought and heard solely and exclusively in the federal or state courts of competent jurisdiction located in New York County, New York and (ii) the parties waive any plea or defense that such courts of are not the appropriate venue or that they are not subject to personal jurisdiction of such courts.

To the fullest extent permitted by law and subject to the terms of the paragraph above regarding New York jurisdiction and venue: (i) you expressly waive any right you may have to arbitrate a dispute as a class action; and (ii) you also expressly waive your right to a jury trial. The arbitration will be administered by JAMS. You may obtain a copy of the rules of JAMS by contacting the organization. Each of us shall agree on one arbitrator to conduct the arbitration. In the event the parties cannot agree on an arbitrator, the arbitrator will be selected in accordance with the JAMS

rules. Each party shall be responsible for its own attorney, expert and other fees, unless such fees are awarded by the arbitrator to the prevailing party.

Notwithstanding anything to the contrary in this Section, to the extent either party in any manner has violated or threatened to violate the other party's intellectual property rights, the non-breaching party may seek injunctive or other appropriate relief in any state or provincial or federal court of competent jurisdiction.

Arbitration Final

The arbitrator's award is final and binding on all parties. The Federal Arbitration Act, and not any state or provincial law concerning arbitration, governs all arbitration under this clause. Any court having jurisdiction may enter judgment on the arbitrator's award. If any part of this clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. Notwithstanding anything to the contrary contained herein, if the waiver of class action rights contained herein is not enforceable as to any person or persons, such non-enforceability shall apply to such person or persons only, and all other persons shall continue to be governed by the Arbitration Clause.

Giving Up Right of Class Action

As stated above, to the fullest extent permitted by law, these terms provide that all Disputes will be resolved by binding arbitration and not in court or by jury trial. IF A DISPUTE IS ARBITRATED, YOU GIVE UP YOUR RIGHT TO PARTICIPATE

AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST THE CALVIN KLEIN PARTIES INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS. WITHOUT LIMITATION, THIS INCLUDES GIVING UP YOUR RIGHTS TO BRING OR PARTICIPATE IN A CLASS ACTION AS SET FORTH IN ANY STATE OR PROVINCIAL STATUTE.

Additional Limit on Claims

Except as otherwise prohibited by law, any Dispute must be brought within one (1) year from the date the cause of action arises.

To the extent that any portions of Section 17 are prohibited by law (including, without limitation, as may be prohibited by the laws of the Provinces of Quebec and Ontario, Canada). Please refer to your local laws for any such prohibitions, then such portions shall be modified to the extent possible and necessary to preserve the original intentions of this Section, and the validity or enforceability of the remaining portions of this Section 17 shall not in any way be affected or impaired thereby.

18. Miscellaneous

You may not use the Site or any Service to import, export re-import or re-export materials or other content in violation of any applicable laws or regulations including without limitation United States and Canada import and export laws and regulations.

If any provision of these terms is held to be unlawful, void, or for any reason unenforceable, that provision will be deemed severable and will not affect the validity and enforceability of the remaining provisions.

These Terms and Conditions and any other policies or other terms incorporated herein, constitute the entire agreement between you and Calvin Klein relating to your use of the Site or any other Service and the use, handling, and rights to User Information or personal information submitted or provided by you, superseding any other agreement between you and Calvin Klein with respect to the subject matter hereof. Section headings in these terms are for convenience only and have no legal or contractual effect. If any provision of these terms or any other policies or other terms incorporated herein shall be found to be unenforceable, the other provisions shall still remain in full force and effect.

A printed version of these terms or any other policies or other terms incorporated herein shall be admissible in judicial and administrative proceedings based thereon to the same extent and subject to the same conditions as other business documents and records originally generated and maintained in printed form.

19. Contact Us.

For issues or questions related to the Site or any other Service or these Terms and Conditions please send a message to Customer Service or call us at 866-513-0513.

59)     Due to Plaintiff's disability, he could not understand Defendant's website and he could not give informed consent to Defendant's installation of data and information tracking software on his computer.  Defendant also could not give informed consent to Defendant's collection of his browsing history and the placement of analytics on his computer.

60)     Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from his computer and determine which programs should be installed and operated on his computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

## **Request for Jury Trial**

61)     Plaintiff requests a jury trial.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email:info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  786-290-1963
Facsimile:  305-824-3868
Email:  radamslaw@bellsouth.net

By: _____/s/_____
RICHARD J. ADAMS, ESQ.
FL BAR NO.: 770434